**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: February 27 2017**

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-33823 |
| | ) | |
| Rhonda Meifert, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 16-03011 |
| | ) | |
| Daniel M. McDermott, | ) | Judge John P. Gustafson |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Rhonda Meifert, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OF DECISION</u>

This adversary proceeding is before the Court for decision after trial on the Complaint [Doc. # 1] of Plaintiff Daniel M. McDermott, United States Trustee ("the UST") alleging that Defendant's discharge of debts should be denied under claims made pursuant to 11 U.S.C. §§ 727(a)(4)(A) (Counts I, II, IV, V), and (a)(2)(A) (Count III).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in a case under or arising under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine objections to discharge are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1), (b)(2)(J).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court will grant judgment on the Complaint in favor of Defendant Rhonda Meifert, and her discharge will not be denied pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A).

## FINDINGS OF FACT

Defendant Rhonda Meifert ("Ms. Meifert") is the debtor in the underlying Chapter 7 case. [Case No. 15-33823, Doc. # 1]. The Complaint against Defendant consists of five counts. Count I alleges that Defendant made a false oath in her Statement of Financial Affairs ("SOFA") when she marked "none" for payments made within one year immediately preceding the commencement of the case, to or for the benefit of creditors who are or were insiders. Plaintiff asserts that Defendant directed the payment of $15,000 to her daughter after the sale of real property, which occurred eight months prior to the filing of the case, and did not list the payment in an effort to dissuade creditors, the chapter 7 trustee, or other parties in interest from seeking the return of the alleged preferential payment. [Doc. # 1, ¶¶ 34-35].

Count II alleges that Defendant testified at her 341 hearing that she read her bankruptcy petition, schedules, statements, and all related documents before signing them, that she was familiar with the information contained therein, and that there were no errors or omissions within the documents. Plaintiff contends that because the $15,000 "payment to her daughter" was not included in her petition, Defendant's alleged false oath as to the accuracy of her petition is grounds for denial of discharge. [*Id.*, ¶¶ 37-39]. Count III states that "Defendant concealed the assignment of mortgage to her daughter for the same reasons that she made the false oaths set forth in Counts I and II", and

because she "really never admitted the transfer" to the Chapter 7 Trustee, Defendant allegedly intended to defraud creditors and the Chapter 7 trustee within one year before filing her petition. [*Id.*, ¶¶ 41-41].

Count IV contends that because Defendant signed her schedules under penalty of perjury and attested to their accuracy and truthfulness, while allegedly making a false oath regarding the assignment of a mortgage to her daughter, she knowingly and fraudulently made false oaths and statements, and as such, should be denied her discharge. [*Id.,* ¶¶ 43-44]. Count V reflects that Defendant signed her ECF Declaration under penalty of perjury and declared that the information provided in her electronically filed bankruptcy documents was "true, correct, and complete." Because Defendant allegedly made false oaths and omitted information from the documents she filed, her discharge should be denied. [*Id.*, ¶¶ 45-46].

In her answer to the Complaint, Defendant admitted to the averments made in paragraphs 1-29 of the complaint. Based on those admissions, the following facts are not in dispute: Defendant filed her petition, schedules, and a SOFA under penalty of perjury. In doing so, she attested that the bankruptcy summary and schedules were true and correct to the best of her knowledge, information, and belief. She signed her SOFA, declaring that the she had read the answers in her Statement of Financial Affairs, and that they were true and correct. Defendant also signed and filed her ECF Declaration, thereby swearing that the information contained in her electronically filed petition, statements, and schedules were "true, correct and complete." [*Id.*, ¶¶ 7-10].

In her petition, Defendant did not list any real property on Schedule A. [Pl. Ex. 2, Schedule A, p. 2-8]. On Schedule I, Defendant disclosed that she was unemployed at the time of filing and received unemployment compensation of $1,696 per month, and she did not list any spousal support payments as income. [*Id.*, Schedule I, pp. 2-26, 2-27]. However, spousal support of $400 was reflected on Item 17 of Schedule B, with a description that Defendant was awarded spousal support, which the "Obligor [did] not pay." [*Id.*, Schedule B, p. 2-11]. Defendant's Answer also admitted that in her SOFA, at Item 3c, she checked the box and answered "None", reflecting that she had not made any payments within one year immediately preceding the commencement of her case, to or for the benefit of creditors who are or were insiders. [Pl. Ex. 2, SOFA, p. 2-34].

During his investigation of this case, Plaintiff discovered a Judgment Entry for Divorce in the case of Defendant versus her ex-husband, entered on July 31, 2013. [Pl. Ex. 13, Judgment Entry].

3

The judgment entry awarded Defendant spousal payments in the amount of $400/month for 120 months. [*Id.*, p. 20]. It further awarded Defendant a $25,000 promissory note "in favor of Plaintiff Akrum Youssef, dated December 23, 2011, and a real estate mortgage listing, [Defendant] as the mortgagee and James W. McMaster, Trustee, as the mortgagor", also dated December 23, 2011, and in the same amount. [*Id.*, p. 17].

Defendant admitted that at her 341 hearing, she testified that she had read her petition, schedules, statements and other related documents prior to signing and filing them, and that she was familiar with the information contained therein. And, being familiar with the information contained within the aforementioned documents, she testified that there were no errors or omissions in them. Further, she testified that she had listed all her assets and creditors on her schedules, and that she had not made any payments or transferred any property to friends or family members within the past fours years. [Doc. # 1, ¶¶ 21-26].

At the 341 hearing, the following line of questioning occurred between the Chapter 7 Trustee and Defendant, with Defendant's answers noted as "A":

Q: Did you transfer a note receivable or a mortgage to your daughter?
A: Oh. A note?
Q: Yeah.
A: I don't think it was a note.
Q: Okay. What do you think might have transferred?
A: Well, it was money she borrowed - - or I borrowed money from her and then paid her back.
Q: Okay. So you borrowed money and you paid it back.
A: Is that considered a note? Okay.
Q: When did you pay it back?
A: Oh, gosh.
Q: In the last four - -
A: Within the year. Within the year.
Q: Within this past year?
A: Yes.
Q: And how much was it?
A: Fifteen thousand.
Q: And how does it work? Did you pay her back monthly installments or did you give her one lump sum? Or how did that work?
A: That was a lump sum.
Q: Okay. So you paid her $15,000 in some form of a lump sum payment. And what month do you think that was?
A: I don't remember. March, February. Somewhere in there I think.

4

Q: Of 2015?

A: Correct.

Q: Okay. Did you ever own 28 Hilton Drive?

A: I don't - - well, I don't know if I was considered to own that. I think, yes.

Q: So your name was on the deed or what do you remember about that?

A: I'm not sure. I know - -

Q: Whatever happened to that property?

A: That was sold and that's where - - I think that's the address of the one that was sold that I got the money for her to pay her back.

Q: Okay. Was that a rental property or did you live there?

A: No, I did not live there. It was just like a rehab.

Q: So you bought the property to flip it or?

A: Yes.

Q: Okay. So you sold it. How much did you sell it for?

A: I couldn't even tell you. Somebody - - I had somebody do it for me.

Q: And did you have partners in that deal?

A: Yes.

Q: Okay. So you - - whatever the sale price was, you didn't get the entire amount?

A: Correct. That's the only thing I got back out of it.

Q: Was 15,000?

A: Correct.

Q: So was this an LLC that had owned it or what was the - -

A: Yes.

Q: So the LLC sells the property and after all the expenses, you net 15,000?

A: That's all I did on that. Yes.

Q: So was that about the same time you paid your daughter back?

A: Yes. I did not pocket any of that.

[Pl. Ex. 3, 341 Hearing Transcript, p. 3-7, ¶ 16 to p. 3-10, ¶ 7].

In her Answer, Defendant stated that any inaccurate statement made in either her SOFA or her testimony at the 341 hearing was either "completely inadvertent and/or based upon a good faith belief that she was providing accurate information" or "accurate testimony". [Doc. # 5, ¶¶ 3-4].

At the trial on the Complaint, Defendant testified that she was a graduate of the Ohio State University, where she received a bachelor's degree in clothing and textiles. At the time of the trial, Defendant's daughter Stacy Meifert was not living with her. Defendant clarified that her daughter had lived with her "maybe a year ago," and her daughter was not living with her at the time she filed her petition.

Defendant recalled that she had met with her attorney in approximately October or November of 2015 to discuss filing her bankruptcy petition, but she did not remember the questions

5

that the Chapter 7 Trustee assigned to her case, Douglas A. Dymarkowski, may have asked her at the 341 hearing. However, she could remember the Chapter 7 Trustee questioning her about any transfers of property made within one year of the filing of her bankruptcy petition. At the time of the 341 hearing, Defendant claimed to not know the difference between a note and a mortgage. When questioned by Plaintiff, Defendant affirmed that she told the Chapter 7 Trustee that she had borrowed money from her daughter, but she wanted to clarify that response, as she had used "the wrong terminology" at the 341 hearing.

Defendant testified that she had not borrowed money or had received a loan from her daughter, as she had mistakenly told the Chapter 7 Trustee. Defendant's mother passed away in February 2011, and as part of her mother's will, $25,000 was left for Stacy Meifert to inherit.[1] Defendant could not recall how she came to be in possession of the $25,000, although she remembered that it was either her brother or her sister who was the executor of her mother's estate.

Defendant recalled that the amount was not given to her in cash, but she could not confirm whether she received the money in the form of a check or a money order. Defendant stated that she believed she told her daughter about the inheritance shortly after she had received it. Stacy Meifert (or "Stacy") testified that she was living in California at the time her grandmother had passed away. Stacy was aware that her grandmother was going to leave her something, but she was unsure as to what she might inherit. At the time Stacy was living in California, she was in "an abusive relationship" and did not want to receive the money directly. Based on general conversations with Ms. Meifert, Stacy was aware that the she would not be sent the money at that time, and that it "would be kept safe."

When asked about the discrepancy between the $15,000 amount discussed during the 341 hearing and the $25,000 amount received from Stacy Meifert's inheritance, Defendant stated that the "[the amount discussed at the 341 hearing] was a mistake, I was just nervous."

Plaintiff questioned Defendant about an assignment of mortgage she signed on March 31, 2015, in the amount of $25,000, and which assigned the mortgage of a property located at 28 Hilton Dr., Toledo, OH 43615 ("the Hilton property") to Stacy Meifert. [Pl. Ex. 7]. Defendant answered

---

[1] / Defendant testified as to the contents of her mother's will. However, a copy of the will was not provided to the court.

that she had given $25,000 to Akrum Youssef, for the purpose of investing in real estate, specifically, the Hilton property, which was to be rehabilitated. Defendant's understanding was that the money given to Mr. Youssef "was an investment, and hopefully [her daughter] could make some money off of it." Defendant's testimony made it clear that she did not understand that assigning the Mortgage to her daughter meant that Stacy would receive the money.

Mr. Youssef testified at trial and was asked to summarize the details of Defendant's investment. The investment was $25,000, and Defendant had no equitable interest in the property. It was an interest only loan, and Defendant would receive the principal back. Mr. Youssef stated that he made interest only payments to Defendant, but the payments were never consistent, and they were made over the course of the property being rehabilitated.

Defendant's testimony also confirmed that the interest payments, made to her in cash, were "sporadic" and were not made monthly. Stacy Meifert initially testified that she did not receive any interest payments from her mother, but then said that her mother supported her with funds while she was in California, and Stacy was unaware what the money was for. Defendant stated on the record that she sent her daughter more money than she ever received from Mr. Youssef.

Plaintiff's Exhibit 4 was the Note, reflecting the $25,000 Defendant had provided to Mr. Youssef. [Pl. Ex. 4]. The Note was prepared by Mr. Youssef, and it set forth that Mr. Youssef was to pay Defendant the principal sum of $25,000 along with 10% interest per annum. Also, "[p]ayments equal to a minimum of One Thousand Dollars . . . shall be made each annum prior to maturity." [*Id.*]. Mr. Youssef's testified that he did not make any $1,000 payment to Defendant as was set forth in the Note, even though the investment property made "around $20-25,000" profit after expenses. Mr. Youssef testified that the Note was verbally restructured "about a year" after the origination of the Note, and the interest was paid in full prior to the sale. He said that all interest payments were made to Defendant, just not in the way that was originally required by the terms of the Note.

Upon review of Plaintiff's Exhibit 5, an "Assignment of Note" from Defendant to her daughter, Mr. Youssef recalled that he was present when Defendant signed the assignment. [Pl. Ex. 5]. The Note was assigned to Defendant's daughter, because Defendant wanted to make sure it was in her daughter's name. When asked why the Note was assigned at that time, on June 6, 2012, without the Mortgage, which was later assigned on March 31, 2015, Mr. Youssef responded that he

7

was not aware that there were supposed to be assigned at the same time. As with the Note, the Assignment of Note had been prepared by Mr. Youssef, who is not an attorney. [*Id.*].

Mr. Youssef made it clear that Defendant was not involved in the rehabilitation of the property. He did not keep Defendant up to date on the progress of the rehabilitation, nor did he discuss the Mortgage with her until "right before they cashed out." It was at that point he noticed the Note and Mortgage did not match, so it became an issue for the parties at that time. This resulted in the Mortgage being assigned to Stacy Meifert in March 2015.

Mr. Youssef also testified that the Hilton property was placed into a trust, for which James McMaster ("McMaster") served as the trustee. [Pl. Ex. 9]. When the court asked why the property was placed into a trust, Mr. Youssef answered that it helped "with anonymity and asset protection." Mr. Youssef stated that McMaster was not paid for his role as trustee. McMaster and Mr. Youssef had served as each other's trustees in past real estate transactions, similar to the one that took place with the Hilton property.

Plaintiff's Exhibit 9, the Settlement Statement (HUD-1) reflects that the Hilton property was sold by the trustee, Mr. McMaster, and of the $70,571.99 gross amount due to the seller, $25,000.00 was for the payoff of the "Rhonda Meifert Mortgage". The Settlement Statement was signed by both the buyer and the trustee and dated by the settlement agent on March 26, 2015. [Pl. Ex. 9]. On March 31, 2015, a check was made in the amount of $25,000 to Stacy Meifert. [Pl. Ex. 10].

When called to testify during her case in chief, Defendant testified that she believed her bankruptcy petition was accurate when she signed it, and that she had no intention of hindering, delaying, or defrauding her creditors. Because she had never received $400 from her husband, she did not know where that amount should be listed on her petition. And because the assignment of the Note had taken place roughly 4 years prior to her 341 hearing, Defendant testified that time had affected her ability to remember the specifics of the real estate transaction.

## LAW AND ANALYSIS

The UST objects to Defendant's possible discharge and seeks a determination that Defendant's discharge be denied pursuant to 11 U.S.C. §§727(a)(4)(A) (Counts I, II, IV, V) and (a)(2)(A) (Count III).

A plaintiff must prove the elements of a §727(a) claim objecting to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991); *Keeney v. Smith (In*

8

*re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000); Fed. R. Bankr. P. 4005. The provisions of §727(a) are to be strictly construed against the creditor (or plaintiff) and liberally in favor of the debtor. *Keeney,* 227 F.3d at 683; *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

## I. 11 U.S.C. § 727(a)(4)(A)

A bankruptcy discharge is a privilege and not a right and should be granted only to the honest but unfortunate debtor. *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991). "[T]he bankruptcy court must balance the policy in favor of liberally applying the Bankruptcy Code to grant discharge to the honest debtor against the policy of denying relief to debtors who intentionally engage in dishonest practices and violate the Bankruptcy Code provisions." *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 352 (Bankr. E.D. Mich. 1999), *quoted in*, *Yoppolo v. Walter (In re Walter),* 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001).

A prerequisite to the privilege of discharge is complete financial disclosure. *Keeney*, 227 F.3d at 685. Thus, under §727(a)(4)(A), a debtor is denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case. . .made a false oath or account[.]" In order to prevail, a plaintiff must prove, by a preponderance of the evidence that:

> 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*Id.* at 685. The Sixth Circuit explained fraudulent intent as contemplated under this section as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

*Id.* at 685-86. A false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Id.* at 686 (*quoting, Beaubouef v. Beaubouef (In re Beaubouef)*, 966

9

F.2d 174, 178 (5th Cir. 1992)).

"The fundamental purpose of §727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to do costly investigations." *U.S. Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012); *see also, Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."). A bankruptcy trustee has neither the time nor the resources to conduct an in-depth review of each and every debtor, necessitating accurate initial disclosures as a key feature of the U.S. bankruptcy system. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 230 (E.D.N.Y.2000); *Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 891–92 (Bankr. E.D. Mich. 2000).

In his complaint, in Counts I, II, IV, and IV, the UST alleges that Defendant made a false oath or account in her SOFA, her Declaration regarding bankruptcy schedules and SOFA, and her ECF declaration, all signed under penalty of perjury, and in her testimony given under oath at her 341 hearing.

On the SOFA, the UST argues that Defendant made a false oath when she failed to disclose a $25,000 payment made to her daughter after the sale of the Hilton property, which occurred within one year before Defendant filed bankruptcy. On the Declaration regarding her schedules and SOFA, Defendant signed the document, affirming that they were true and correct, even though the document did not include accurate information regarding the $25,000 payment that went to her daughter. In the eyes of the UST, this constituted a false oath, as did Defendant's signing of the ECF declaration, wherein she declared the information contained in her electronically filed documents were true, correct and complete, when they did not accurately list the aforementioned $25,000 payment. Finally, the UST contends that Defendant's false testimony at the 341 hearing, when she testified that her petition was accurate and that she had not made any payments or transferred any property to friends or family within the past four years was a false oath, made to conceal the assignment of the Hilton property Mortgage to her daughter.

With respect to the elements established by the *Keeney* court, there is no argument, and the Defendant admits as such, that statements were made under oath, and the statements regarding the transfer of the Hilton property were false. It is clear from the record before the court, and from the evidence submitted at trial, that Defendant assigned a Mortgage to her daughter within one year

10

preceding the filing of her bankruptcy petition. The assignment of the Mortgage, paired with the Note assigned years earlier, allowed Defendant's daughter to receive the $25,000 that Defendant had initially invested with Mr. Youssef. The $25,000 payment to her daughter should properly have been listed on the Defendant's SOFA, and because it was not, Defendant's SOFA, and her subsequent Declaration regarding her schedules and SOFA, and her ECF Declaration, contained false statements. Further, Defendant admitted to making a false statement under oath at her 341 hearing, when she did not disclose assigning a Mortgage to her daughter. Therefore, the first two *Keeney* elements have been proven by Plaintiff.

However, Plaintiff was unable to satisfy the third and fourth *Keeney* elements, which are the most commonly contested elements of a §727(a)(4)(A) action. *U.S. Tr. v. Halishak (In re Halishak)*, 337 B.R. 620, 627 (Bankr. N.D. Ohio 2014). The court in *Ayers v. Babb* wrote, when considering the third element, "[k]nowledge that a statement is false can be evidenced by a demonstration that the debtor knew the truth, but nonetheless failed to give the information or gave contradicting information." *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn.2006). Here, the UST was unable to demonstrate that Defendant knew the truth but failed to give the information.

Through her testimony at the trial, which the court finds "credible", although at times both confused and confusing, Defendant made it evident that she was not aware of the proper legal definitions and meanings behind mortgages, mortgage notes, or what it meant to assign such things to her daughter[2]. Because she believed that her daughter, Stacy Meifert, had inherited the $25,000 from her grandmother, Defendant never considered that money to be hers. She always considered the money to be Stacy's, which she was to look after until such time as Stacy requested it.

After Defendant invested the money with Mr. Youssef, Defendant was in the process of getting a divorce. She testified that she was worried that her ex-husband might go after Stacy's inheritance during the divorce, so Defendant assigned the Note to Stacy, and later the Mortgage, to ensure that Stacy would get her $25,000 returned to her after the Hilton property was sold.

As Defendant believed that she was returning Stacy's money to her, as opposed to making a payment to a creditor, the court cannot find that Defendant knew that marking "None" on her

---

[2]/ It should be noted that early in the hearing, the court was highly skeptical of Debtor's lack of understanding, in part because she has a college degree. As the trial proceeded, the court came to the conclusion that Debtor's lack of understanding, confusion, and fallible memory was not feigned.

11

SOFA was false. And because Defendant did not know that the statement on her SOFA was false, Count I, as well as Counts IV and V of Plaintiff's Complaint, cannot satisfy the third *Keeney* element.

This also holds true for the statements made under oath at her 341 hearing. Although Defendant answered the Chapter 7 Trustee's questions incorrectly, regarding both the amount of the transfer and when such a transfer of the Note and Mortgage had even taken place, she did not know the answers she was giving were false. She did not have an understanding of the mechanics of the Note and Mortgage transfers, as she believed that the money and the investment in the Hilton property were never hers to begin with. Moreover, those documents were prepared for her by Mr. Youssef, who is not an attorney. Thus, the third *Keeney* element has not been met by Plaintiff with regards to Counts I, II, IV, and V.

Fraudulent intent is a factual issue determined by the court based on the totality of the circumstances. *In re Keeney,* 227 F.3d at 686; *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 724 (6th Cir. BAP 1999). It "requires that the debtor . . . made or failed to make the statement with the intention of being fraudulent." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998). Demonstrating fraudulent intent "involves a material representation that [Defendants] know to be false, or, what amounts to the same thing, an omission that [Defendants] know will create an erroneous impression." *In re Keeney,* 227 F.3d at 685. A reckless disregard or an indifference for the truth will also demonstrate fraudulent intent. *Id.* at 686; *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). Intent can be inferred from Defendants' conduct, and a continuing pattern of false statements and/or omissions in bankruptcy schedules exhibit a reckless indifference for the truth. *In re Hamo,* 233 B.R. at 725.

As with the third element set forth by the *Keeney* decision, the fourth element requires a court to look at statements that a Defendant knew to be false. As set forth above, Defendant's testimony, and the evidence provided to the court, reflects that Defendant did not know that the statements she made in her SOFA and in her testimony to the Chapter 7 Trustee were false. Defendant did not know that her statements, or lack thereof, were creating an erroneous impression, and her misstatements did not reflect a debtor who has a reckless disregard or indifference for the

12

truth. Defendant was confused by the questions[3] she was being asked at her 341 hearing, as she was confused by many of the questions during the Trial. Thus, the court finds that she was unaware of the legal significance behind the assignments of the Note and the Mortgage to her daughter.

Accordingly, Plaintiff has not proven by a preponderance of the evidence that Defendant acted with the requisite knowledge or fraudulent intent in making the false statements that she (admittedly) made. Therefore, this court will not deny Defendant's discharge based upon claims in Counts I, II, IV, and V brought under Section 727(a)(4)(A) seeking denial of Defendant's discharge.

## II. 11 U.S.C. § 727(a)(2)

In Count III of the Complaint, Plaintiff objects to Defendant's Chapter 7 discharge pursuant to § 727(a)(2)(A). Consistent with the fresh start policy underlying the Bankruptcy Code, the provisions of § 727(a) are to be construed strictly against the objecting party and liberally in favor of the debtor. *Risk v. Hunter (In re Risk)*, 535 B.R. 203, 220 (Bankr. N.D. Ohio 2015) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)). The party objecting to the discharge has the burden of proving by a preponderance of the evidence that the exception applies. *Keeney*, 227 F.3d at 683.

Section 727(a)(2) provides that:

(a) The court shall grant the debtor a discharge unless–

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed–

>> (A) property of the debtor, within one year before the date of the filing of the petition; or

>> (B) property of the estate, after the date of the filing of the petition[.]

This requires a plaintiff to prove the following two elements: 1) a disposition of property; and 2) "'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Id.* (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th

---

[3] This is not a criticism of the Chapter 7 Trustee. The questions that were asked did not appear to be inherently confusing.

Cir. 1997)).

In the matter at hand, it is clear that a disposition of property took place within one year of the filing of the bankruptcy petition. The Mortgage was assigned from Defendant to her daughter on March 31, 2015 [Pl. Ex. 7], and Defendant filed her petition on November 27, 2015. [Case No. 15-33823, Doc. # 1]. However, Plaintiff was unable to prove that Defendant had an intent to hinder, delay, or defraud a creditor or officer of the estate by concealing the transfer that took place.

In this decision, the court has already determined that Defendant lacked fraudulent intent under § 727(a)(4)(A), and "fraudulent intent under § 727(a)(2)(A) is practically identical." *McDermott v. Capra (In re Capra)*, 2016 WL 5106994, at * 10, 2016 Bankr. LEXIS 3410, at *29 (Bankr. N.D. Ohio Sept. 19, 2016). Another Ohio court has ruled that "the standard necessary to support a finding of knowingly making a false statement with the intent to defraud [under § 727(a)(4)(A) ] is, for all practicable purposes, identical to the standard required to support a finding of fraudulent intent under § 727(a)(2)." *In re Newell*, 321 B.R. 885, 892 (Bankr. N.D. Ohio 2005). *See also*, *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 160 (Bankr. E.D. Pa. 2010). The difference between fraudulent intent in (a)(4)(A) and (a)(2)(A): one requires a false oath, and other requires the concealment of property. As the *Capra* court noted, a court's finding that a debtor did not have the fraudulent intent necessary under § 727(a)(4)(A) "strongly weighs in favor of a similar finding under § 727(a)(2)(A)." *Capra*, 2016 WL 5106994, at *10, 2016 Bankr. LEXIS 3410, at *30.

The UST argues that Defendant's discharge should be denied under (a)(2)(A) based on Defendant's alleged concealment of the Hilton property transfer. But, the evidence indicates that Defendant believed that she did not use her own funds to invest in the property, nor did she believe that it was her property, and transferring the Note and later the Mortgage to her daughter was done to accommodate her daughter, who had been entitled to the $25,000 but had not received it because of the difficulties associated with her relationship.

Defendant's testimony reflected that she never had an intent to personally benefit from the sale of the rehabilitated property as an equity participant. She was unaware of the most basic facts about the "flip", including the final sale price of the Hilton property. She lacked the requisite intent to conceal property from creditors or the Chapter 7 trustee. Her understanding, such as it was, viewed the transaction through the lens of returning her daughter's funds. Plaintiff was unable to

14

show, by a preponderance of the evidence, that Defendant's intent rose to the level of fraudulent concealment.

Accordingly, the UST has failed to establish his claim in Count III seeking denial of Defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

## CONCLUSION

The UST has not met his burden of proof on his claims against Defendant Rhonda Meifert under 11 U.S.C. §§ 727(a)(4)(A) and (a)(2)(A), and a judgment on the complaint will be entered in favor of Defendant Rhonda Meifert.

A separate judgment in accordance with this Memorandum of Decision will be entered by the court.

###

15